IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Continental Casualty Company, | Case No. 3:08 CV 1889 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Auto Plus Insurance Agency, LLC, et al., | |
| Defendants. | |

## INTRODUCTION

This matter involves several interrelated disputes over insurance contracts. Plaintiff Continental Casualty Corporation ("Continental") initially filed this suit seeking declaratory judgment against Defendants Ronald Billings ("Billings"), Auto Plus Insurance Agency, LLC ("Auto Plus"), and James Ehrsam ("Ehrsam"). Billings and Auto Plus (whose interests are aligned in all these disputes) then filed third-party claims against five Third-Party Defendants: Arch Insurance Company ("Arch"), Fireman's Fund Insurance Company ("Fireman's Fund"), Farmers Insurance Exchange ("Farmers"), CalSurance Associates, Inc. ("CalSurance"), and Professional Insurance Agents Association ("PIA"). Three of those Third-Party Defendants -- Arch, Fireman's Fund, and Farmers -- have since been dismissed, leaving the initial claim and third-party claims against CalSurance and PIA.

The parties filed a Joint Statement of Undisputed Facts (Doc. No. 80). Pending are the following: (1) cross-Motions for Summary Judgment by Continental and Billings/Auto Plus (Doc. Nos. 85-86, 87, 91-92); (2) CalSurance's Motion to Dismiss, and cross-Motions for Summary Judgment by CalSurance and Billings (Doc. Nos. 83, 87, 90, 95); and (3) cross-Motions for Summary Judgment by PIA and Billings/Auto Plus (Doc. Nos. 81, 87, 89, 93).

### BACKGROUND

Because of the large number of parties involved, this Court will briefly review the cast of characters and their claims before setting forth the facts in more detail. Ehrsam is the owner of a property which suffered fire damage. Auto Plus (through its agent Billings) is the insurance agency which sold casualty insurance to Ehrsam. That casualty insurance failed to cover all of the fire losses, prompting Ehrsam to sue Auto Plus and Billings in state court. Continental is Auto Plus' and Billings' professional liability insurer. Continental filed this lawsuit seeking a declaratory judgment that it has no duty to defend Auto Plus and Billings against Ehrsam's claims. In turn, Auto Plus and Billings filed third-party claims against PIA and CalSurance. PIA is the agency that sold Auto Plus and Billings the Continental Policy. CalSurance is the agency that sold Billings the liability insurance policy he held *prior* to the Continental Policy (Billings was then an agent with a different insurance sales agency). Auto Plus and Billings claim that PIA and CalSurance were negligent in failing to advise Billings that he was not covered for a claim like Ehrsam's, and that PIA breached its duty to obtain adequate coverage for Billings. The specific facts of the case follow.

This matter arises out of a January 25, 2007 fire at a property in Delta, Ohio owned by Ehrsam (d/b/a Delta Complex I, LLC). That property was covered by an insurance policy issued by Buckeye Insurance Group ("Buckeye Policy"). However, the Buckeye Policy apparently did not cover all of

the losses from the fire (Doc. No. 80, ¶ 5). Billings is the insurance agent who sold the Buckeye Policy to Ehrsam in May 2002. At the time he sold the policy to Ehrsam, Billings was an agent for Auto Plus (Doc. No. 80, ¶ 3). The Buckeye Policy was automatically renewed at each of its annual anniversaries and remained in effect until at least January 25, 2007. The renewal invoices were billed directly from Buckeye to Ehrsam; they did not go through Billings (Doc. No. 80, ¶ 4).

On June 19, 2008, Ehrsam filed suit against Billings and Auto Plus in Fulton County, Ohio ("the Fulton County suit"). The crux of Ehrsam's claim is set forth in his state court Amended Complaint (Doc. 80-3, p. 2-3):

> 8. [Billings and Auto Plus] had and have a duty to advise and provide adequate coverage for [Ehrsam] which is adequate to cover foreseeable losses, including but not limited to rebuilding the buildings after fire losses.
> 9. [Billings and Auto Plus] were negligent in that each year at the renewal of the insurance policy, [they] breached their obligations and duties to give advice and provide adequate coverage for loss suffered by [Ehrsam].
> 10. [Billings and Auto Plus] were negligent in that each year at the renewal of the insurance policy, they breached their duty to advise their insureds, including [Ehrsam], of how a total or partial loss to property will be settled by the insurance company based upon the provisions of the policy, and also breached their duty to explain how the co-insurance clause in the policy is calculated.

At the time Billings (as agent for Auto Plus) placed the Buckeye Policy, he was also an agent with Farmers Insurance Exchange. Billings was a Farmers agent from 1987 until January 7, 2005 (Doc. No. 80, ¶ 1). As part of the benefits available to its agents, Farmers offered claims-made errors and omissions ("E&O") liability coverage through a group insurance policy. Billings was enrolled in this E&O coverage until his Farmers agency contract terminated in January 2005 (Doc. No. 80,

3

¶ 11).[1]  CalSurance was the agency that procured the liability coverage for the Farmers agents, including Billings (Doc. No. 80, ¶ 14).

When Billings' agency with Farmers ended in 2005, he received new E&O coverage through Auto Plus. PIA was the agency that placed E&O coverage for Auto Plus in 2005 (Doc. No. 80, ¶ 28). Auto Plus' E&O coverage was provided by Continental pursuant to a "claims made and reported Property and Casualty Agency Professional Liability Policy" (the "Continental Policy") (Doc. No. 80, ¶ 28). The Continental Policy was effective November 16, 2005 and includes a retroactive date of November 16, 2004. In relevant part, the Continental Policy provides (Doc. No. 80-7, p. 4, emphasis in original):

> We will pay all amounts, excess of the retention, within the limits of liability stated on the Declarations,[2] that the **insured** becomes legally obligated to pay as **damages** as a result of a **claim** by reason of a **wrongful act** in the rendering of **professional services** by the **insured** or by someone for whom the **insured** is legally liable, provided that:
> 1. such **wrongful act** occurred after the **retroactive date** shown on the Declarations;
> 2. prior to the effective date of the **policy period**, the **insured** did not know or could not have reasonably expected that such **wrongful act** or **related wrongful acts** would result in a **claim**;

---

[1] Fireman's Fund Insurance Company provided the group liability coverage for Farmers agents from October 1, 2001 to January 1, 2004; Arch Insurance Company provided the coverage from January 1, 2004 to January 1, 2006. Farmers, Fireman's Fund, and Arch were originally named as Third-Party Defendants but have all been dismissed from this suit, and their involvement is only peripherally relevant to the claims that remain.

[2] The word "Declarations" is used in the copy of the actual insurance agreement attached as Exhibit G to the Joint Statement of Undisputed Facts (Doc. No. 80-7, p. 4). However, the text of the parties' Joint Statement of Undisputed Facts replaces the term "Declarations" with "insured's certificate of insurance" (Doc. No. 80, ¶ 32). The reason for the discrepancy is unclear, but the difference is immaterial to the questions presented. The Continental Policy's retroactive date and limits of liability -- the terms stated on the Declarations -- are not in dispute.

4

      3.      prior to the effective date of the **policy period**, the **wrongful act** or **related wrongful acts** has not been the subject of any notice given under any other policy, in whole or in part, regardless of whether or not such other policy affords coverage; and

      4.      the **claim** is both made against the **insured** and reported to us during the **policy period** or any applicable **extended reporting period.**

In addition, the Continental Policy defines "wrongful act" as "any negligent act, error or omission of, or personal injury caused by, the insured, or by someone for whom the insured is liable, in rendering or failing to render professional services" (Doc. No. 80, ¶ 35).

Billings did not read the Continental Policy prior to the institution of this litigation (Doc. No. 80, ¶ 38). He never dealt directly with PIA, the agency that placed the Continental Policy with Auto Plus. Rather, Billings' brother Bob, his partner at Auto Plus, was responsible for obtaining E&O coverage for Auto Plus' agents (Billings Dep., pp. 55-56, 90).

## STANDARDS OF REVIEW

**Motion to Dismiss under Rule 12(b)(6)**

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the function of the court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the court is required to accept as true the allegations stated in the complaint, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the complaint in a light most favorable to the plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). Although a complaint need not contain "'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**Summary Judgment under Rule 56(c)**

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* When considering a motion for summary judgment, this Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, this Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Moreover, the fact that both parties have filed cross-Motions for Summary Judgment "'does not mean that the court must grant judgment as a matter of law for one side or the other.'" *Ferro Corp. v. Cookson Group, PLC*, --- F.3d ----, 2009 WL 3673043 at \*2 (6th Cir. 2009) (citing *Taft Broad Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991)). Because "'summary judgment in favor of either party is not proper if disputes remain as to material facts . . . the court must evaluate each party's motion on its own merits.'" *Id.*

**DISCUSSION**

**Continental Casualty v. Billings and Auto Plus**

This Court will first discuss the cross-Motions for Summary Judgment filed by Continental and Billings/Auto Plus. Continental seeks a declaratory judgment that it has no duty to defend Billings or Auto Plus in the Fulton County suit. The crux of the parties' dispute is whether the Fulton County suit alleges wrongful conduct by Auto Plus and billings that occurred *before* or *after* the Continental Policy's retroactive date of November 16, 2004. If the alleged conduct occurred *before* the retroactive date, Continental has no duty to defend. Both parties agree this dispute is a question of law appropriate for resolution on summary judgment.

Continental identifies the wrongful act as Auto Plus' alleged failure to provide sufficient coverage to Ehrsam when it initially placed the Buckeye Policy in 2002. Thus, contends Continental, the wrongful act at issue in the Fulton County suit occurred before the retroactive date and is not covered by the Continental Policy. Auto Plus argues that the Continental Policy's definition of "wrongful acts" is ambiguous and should therefore be construed liberally in its favor. According to Auto Plus, the precise "wrongful act" for which Auto Plus seeks Continental's defense can only be determined by resolution of the underlying suit, which alleges a breach of duty at each yearly renewal of the policy. Because some of the renewals occurred after the retroactive date, Auto Plus argues Continental must defend it in the underlying suit.

An insurance policy is "a contract and like any other contract is to be given a reasonable construction in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *Dealers Dairy Prods. Co. v. Royal Ins. Co.*, 170 Ohio St. 336, 339 (1960). However, where provisions in a contract are reasonably

7

susceptible of more than one meaning, they are strictly construed against the insurer. *King v. Nationwide Ins. Co.*, 35 Ohio St. 3d 208, 211 (1988). In other words, "the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can be fairly placed on the language in question." *Anderson v. Highland House Co.,* 93 Ohio St. 3d 547, 549 (2001) (citations omitted).

Moreover, "[a]n insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy, even in part and even if the allegations are groundless, false or fraudulent." *City of Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St. 3d 186, 189 (2006) (citing *Sanderson v. Ohio Edison Co.*, 69 Ohio St. 3d 582 (1994), at paragraph one of the syllabus). However, "[a]n insurer need not defend any action or any claims within the complaint when all the claims are clearly and indisputably outside of the contracted policy coverage. *Id.* (citing *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St. 3d 108, 113 (1987)).

In this case, the Fulton County suit alleges in part that Auto Plus and Billings "were negligent in that each year at the renewal of the insurance policy, the Defendants breached their obligations and duties to give advice and provide adequate coverage for loss suffered by the Plaintiff." (Doc. 80-3, ¶ 9). On the surface, that Complaint states a claim that is covered by the Continental Policy. The alleged negligence with regard to the renewals falls within the Continental Policy's broad definition of wrongful act as "any negligent act, error or omission of, or personal injury caused by, the insured, or by someone for whom the insured is liable, in rendering or failing to render professional service" (Doc. No. 80, ¶ 35), and some of the yearly renewals occurred *after* November 16, 2004, the retroactive date of the Continental Policy.

However, it is undisputed that Auto Plus and Billings had no involvement in the yearly renewals of the Buckeye Policy (Doc. No. 80, ¶ 4). Buckeye mailed the premium notices directly to Ehrsam. Because these facts are undisputed, Ehrsam has not stated a claim against Billings that even arguably falls within the policy coverage. Under Ohio law, there can be no negligence with respect to the renewals because Auto Plus and Billings had absolutely no connection to them. *See Jones v. Auto-Owners Mut. Ins. Co.*, No. L-98-1297, 1999 WL 435103 at *8 (Ohio App. June 30, 1999) (holding that insurance agent who sold coverage to a property owner had no duty to make annual reviews of the property owner's insurance needs); *see also* 44 C.J.S. *Insurance* § 309 (2009) ("[I]t is well settled that agents have no continuing duty to advise, guide, or direct a client to obtain additional coverage, or, absent special circumstances in the relationship with the insured, an affirmative duty to update an insurance policy at the time it is renewed . . . .").

Auto Plus and Billings argue that the Continental Policy's broad definition of "wrongful act" is ambiguous. But breadth of coverage does not mean that the policy language is ambiguous as applied to particular claims alleging particular wrongful acts. The claims asserted by Ehrsam in the Fulton County suit cannot possibly be construed as falling within the policy coverage -- no matter how broad the definition of "wrongful act." The alleged negligence in placing the policy occurred *before* the coverage period. That is undisputed. And the yearly renewals, which *did* fall within the coverage period, had no connection to Auto Plus or Billings. That is likewise undisputed. Therefore, "all the claims are clearly and indisputably outside of the contracted policy coverage," *City of*

9

*Sharonville*, 109 Ohio St. 3d at 189, and Continental has no duty to defend or indemnify Auto Plus or Billings.[3]  Continental's Motion for Summary Judgment is granted.

**Billings v. CalSurance**

CalSurance is the insurance agency that sold liability insurance to Farmers Insurance Exchange when Billings was an agent there.[4]  In his Amended Third Party Complaint (Doc. No. 46, ¶ 45), Billings alleges:

> As a result of Cal-Surance's failure to inform and/or notify Mr. Billings of any requirement to maintain or purchase continuation coverage of E&O coverage with Fireman's Fund and/or Arch upon the termination of his agency with Farmers, Mr. Billings has sustained damages and may sustain significant damages in the future."

CalSurance filed both a Motion to Dismiss for failure to state a claim and a Motion for Summary Judgment on Billings' claim.  Both Motions are based on the argument that CalSurance had no duty to advise Billings regarding the termination of his insurance coverage.  Billings argues he relied on CalSurance "to advise him of the effect of a claims-made and reported E&O policy and to make sure that Billings would continue to be covered by E&O coverage" (Doc. No. 90, pp. 2-3).  This Court will first address the Motion to Dismiss.

Under Ohio law, an insurance sales agency owes a general duty to its customer "to exercise good faith and reasonable diligence in obtaining insurance which its customer requests." *First Slovak Catholic Union v. Buckeye Union Ins. Co.*, 27 Ohio App. 3d 169, 170 (1986); *see also Damon's Missouri, Inc. v. Davis*, 63 Ohio St. 3d 605, 609 n.2 (1992).  However, an agency has no specific duty

---

[3] In light of this conclusion, this Court need not address Continental's alternative contention that the yearly renewals were "related wrongful acts" that relate back to initial placement of the policy.

[4] The third party claim against CalSurance is brought only by Billings.  CalSurance never had a direct relationship with Auto Plus.

to advise a client unless "the agency knows that the customer is relying upon its expertise." *Id.*; *see also Advent v. Allstate Ins. Co.*, No. 05AP-1092, 2006 WL 1495066 at *3 (Ohio App. June 1, 2006) ("[I]f an agent knows that the client is relying upon his expertise, then the agent owes a further duty to exercise reasonable care in advising the client."). Thus, the fact that an agent obtains an insurance policy for a customer does not mean that the agent automatically has a duty to advise the customer about the policy; the duty to advise arises only when the agent is aware of a particular customer's reliance on its expertise.

Billings' Complaint contains no allegation that CalSurance knew of Billings' reliance on it for advice regarding his E&O coverage in general, let alone the specific implications of terminating his coverage. Indeed, there is not even a suggestion that CalSurance had any direct contact with Billings at all. The only allegation in the Complaint addressing the relationship between Billings and CalSurance is the statement that "Cal-Surance was the insurance agency who wrote the insurance coverage for Farmers and its agents" (Doc. No. 46, ¶ 19). Billings does not allege that CalSurance provided insufficient coverage for the policy it wrote, but rather that CalSurance failed to educate him about the consequences of terminating his agency with Farmers (and the attendant termination of the policy that CalSurance had sold him). However, the fact that CalSurance wrote the insurance coverage for Billings does not, by itself, create a duty to advise Billings about the nature or extent of that coverage. Billings cites no case or statute to the contrary.

Because the Complaint lacks any allegation that CalSurance was aware of Billings' reliance, Billings fails to state a plausible claim for relief. CalSurance's Motion to Dismiss is therefore granted. In light of this conclusion, this Court need not address CalSurance's Motion for Summary Judgment.

**Billings and Auto Plus v. PIA**

Billings and Auto Plus bring two claims against PIA, which wrote the Continental Policy for Billings. Billings and Auto Plus seek a declaratory judgment that PIA failed to (1) obtain adequate liability insurance which would cover claims made under past policies, and (2) inform Billings of potential future liability for claims made under past insurance policies placed by Billings. PIA requests summary judgment in its favor on two grounds: (1) this Court lacks subject matter jurisdiction over Billings' third-party claims against PIA, and (2) Billings and Auto Plus have offered no facts supporting their contention that PIA breached any duties owed to Billings or Auto Plus.

*Subject Matter Jurisdiction*

PIA argues this Court has no subject matter jurisdiction over Billings' third-party claim because the claim is based on state law, yet both PIA and Billings are residents of Ohio, which defeats this Court's diversity jurisdiction. However, this Court finds it has supplemental jurisdiction over Billings' claim under 28 U.S.C. § 1367(a).[5] Billings' claim against PIA is part of the same case or controversy as Continental's original claim against Billings, because PIA was the insurance agent that wrote the Continental Policy for Billings and Auto Plus.

Moreover, Billings' and Auto Plus' third-party claim does not fall within the exceptions to supplemental jurisdiction set forth in Section 1367(b).[6] That subsection provides in relevant part that

---

[5] "Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . . ." 28 U.S.C. § 1367(a).

[6] "In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14 . . . of the Federal Rules of Civil Procedure . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b).

12

in a case originally founded on diversity jurisdiction, a federal district court may not exercise supplemental jurisdiction over a plaintiff's claims against a third-party defendant *unless* those claims independently meet the requirements for diversity jurisdiction. However, that exception applies only to an *original plaintiff's* claims against a third-party defendant, not to a *third-party plaintiff's* claims against a third-party defendant. *See Grimes v. Mazda N. Am. Operations*, 355 F.3d 566, 572 (6th Cir. 2004) ("'A court has ancillary jurisdiction of a defendant's proper Rule 14(a) claim against a third-party defendant without regard to whether there is an independent basis of jurisdiction, so long as the court has jurisdiction of the main claim between the original parties.'") (quoting *King Fisher Marine Serv., Inc. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1161 (10th Cir. 1990)); *see also State Nat. Ins. Co. v. Yates*, 391 F.3d 577, 579-80 (5th Cir. 2004) (holding, in a diversity action originally brought by an insurance company, that subject matter jurisdiction existed for defendant's third-party claim against a non-diverse insurance agent). Thus, there is no requirement that Billings' and Auto Plus' claims against PIA have an independent jurisdictional basis, and this Court may properly exercise supplemental jurisdiction over those claims.

PIA cites *Guigliano v. Danbury Hosp.*, 396 F. Supp. 2d 220, 224 (D.Conn. 2005) for the rule that "diversity jurisdiction over a third-party claim depends only on the citizenship of the third-party plaintiff and defendant" (Doc. No. 81, p. 8). However, the court in *Guigliano* was concerned only with whether impleader of a third-party defendant from the same state as the original plaintiff violated the "complete diversity" rule, and the court held that it did not. *Id.* (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 66-67 n.1 (1996)). The court in *Guigliano* did hint that it would not have had jurisdiction over the third-party claim if the third-party plaintiff and defendant had been from the same state. *Id.* But that language is in conflict with the clear rule in the Sixth Circuit, which does not require an independent basis of jurisdiction for third-party claims. *See Grimes*, 355 F.3d at 572. This

13

Court properly has subject matter jurisdiction over Billings' claims against PIA, and it will thus address the merits of the parties' cross-Motions for Summary Judgment.

*PIA's Duties to Billings and Auto Plus*

Turning to the merits of the dispute, PIA's first argument is that Billings' failure to object to the policy as written is a bar on his ability to recover from PIA. Billings has only himself to blame for the deficient coverage, contends PIA, because even though he failed to read the Continental Policy, he was charged with the knowledge of its contents. PIA puts the point colorfully:

> [A]t the center of Mr. Billings' allegations is the naked truth that he, an experienced insurance agent, never bothered to read the policy or inquire or complain about the coverage at any time. Mr. Billings' willful ignorance drives a stake into the heart of his claim.

(Doc. No. 93, pp. 7-8) (internal citations omitted).

This Court cannot conclude as a matter of law that Billings' lack of objection to the policy's language operates as an absolute bar to recovery. It is true that Billings' failure to read the policy is no excuse for his ignorance of its terms. *See Union Cent. Life Ins. Co. v. Hook*, 62 Ohio St. 256, 263 (1900) (When an insured accepted a policy and paid the premiums for several years, "the presumption is conclusive . . . that he knew the contents of the instrument . . . and he is conclusively bound by the terms of the policy, whether he has read it or not."). Nevertheless, Billings' "willful ignorance" of the Continental Policy's terms does not, by itself, entitle PIA to summary judgment.

PIA relies principally on two cases for the proposition that an insured is barred from recovery if the insured accepts the policy without complaint. In *Nofer v. Volanski Agency, Inc.*, 414 N.E.2d 450, 452 (Ohio Com. Pl. 1980), the trial court found that "the plaintiff cannot be allowed to remain silent for more than eight months and enjoy the benefits of a lower premium and then be heard to complain when a loss does occur, that the coverage was not adequate." Similarly, the court in *First*

14

*Slovak*, 27 Ohio App. 3d at 171, noted that an insured "cannot complain that the policies did not comply with its requests, when it made no complaint about those policies for that extended interval [of several years]." However, *Nofer* and *First Slovak* were not decided on summary judgment; *Nofer* was the court's explanation of its verdict following trial, and *First Slovak* was an appellate review of a trial court's verdict. Thus, the lesson of those cases is that an insured's failure to object can be persuasive *evidence* that an insurance agent has not breached its duty to provide requested coverage or necessary advice. However, neither case held that a failure to complain about a policy barred recovery against an insurance agent as a matter of law.

Moreover, a recent unpublished Ohio Court of Appeals decision held that an insured's failure to object to a policy does not "completely negate" the insured's claim against the agent. *Wanner Metal Worx v. Hylant-Maclean, Inc.*, 2003 WL 1826558 at *8 (Ohio App. 2003). Such a rule "would [impose] strict contributory negligence when such is not the standard in Ohio." *Id.*; *see also Javitch v. Todd Assocs., Inc.*, No. 3:03-CV-972, 2005 U.S. Dist. Lexis 33689 at *14 (N.D.Ohio 2005) ("[Insurance agent's] argument that [the insured] failed to complain about sufficient coverage is an affirmative defense to be asserted at trial."). Therefore, this Court cannot grant summary judgment on the ground that Billings never communicated any dissatisfaction with the Continental Policy to PIA.

Nevertheless, this Court concludes that summary judgment in favor of PIA is appropriate, because Billings has not offered the slightest bit of evidence that PIA breached any duties owed to Billings. As explained above, an insurance sales agency owes a general duty to its customer "to exercise good faith and reasonable diligence in obtaining insurance which its customer requests." *First Slovak*, 27 Ohio App. 3d at 170. An insurance agent may have a further duty to advise a client "when the agency knows that the customer is relying upon its expertise." *Id.*

15

Billings claims he was unaware that the Continental Policy would not cover policies he had written before the retroactive date, and that PIA should have known he needed such coverage. But Billings admits he never spoke directly with PIA; rather, Billings' brother, his partner at Auto Plus, was responsible for obtaining his liability coverage (Billings Dep., pp. 55-56, 90). The record contains no suggestion that either Billings or his brother specifically requested E&O coverage extending back beyond the retroactive date in the Continental Policy. Billings' deposition testimony is telling (Billings Dep., pp. 90-91):

> Q. And did that agent that sold you [the Continental Policy] talk to you about extended coverage for losses that you may have written in 2002, '3, '4, or '5?
> A. I never talked to that person directly.
>
> Q. Who did?
> A. My brother, Bob.
>
> Q. Did they discuss that with your brother, Bob?
> A. He doesn't recall that they ever did.

Furthermore, Billings has not argued that it is standard industry practice for E&O insurers to provide such extended coverage to agents in Billings' position. Absent such evidence, Billings is left with only the bald assertion that PIA should have known he needed such coverage. But certainly nothing in Ohio law suggests that an insurance agent must divine the needs of its customers. Rather, an agent must only exercise reasonable diligence in procuring the requested coverage. Billings points to nothing in the record suggesting PIA did not comply with its duty to provide the requested coverage.

As to PIA's alleged failure to advise Billings of his deficient coverage, Billings' claim fails at the threshold, because he has not established that PIA had a duty to advise him. Billings offers no evidence that PIA was aware of Billings' reliance on its expertise -- the condition necessary to create an agent's duty to advise a customer. *See First Slovak*, 27 Ohio App. 3d at 170. Again, Billings acknowledges he never had any direct contact with PIA, so there is no basis whatsoever to think he

16

communicated a message of reliance to PIA. Thus, PIA had no duty to provide specific advice about the insurance policy it obtained for Billings, including whether or not that policy would cover claims made against Billings based on policies he had sold before the retroactive date.

In sum, Billings has failed to identify a single material fact that would support his claims against PIA. PIA is therefore entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Continental's Motion for Summary Judgment (Doc. No. 85) is granted. CalSurance's Motion to Dismiss the third-party claim of Billings (Doc. No. 83) is granted, and CalSurance's Motion for Summary Judgment (Doc. No. 83) is denied as moot. PIA's Motion for Summary Judgment (Doc. No. 81) is granted. Billings/Auto Plus's Motion for Summary Judgment (Doc. No. 87) is denied as to all parties.

IT IS SO ORDERED.

                                                                                    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

December 11, 2009