IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Continental Casualty Company, | Case No. 3:08 CV 1889 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Auto Plus Insurance Agency, LLC, et al., | |
| Defendants. | |

### INTRODUCTION

This matter comes before the Court on Third-Party Defendant Arch Insurance Company's ("Arch") Motion for Sanctions against Third-Party Plaintiff Ronald Billings' ("Billings") counsel Bahret & Associates Co., L.P.A. ("Bahret") (Doc. No. 100). Bahret filed an Opposition (Doc. No. 101), and Arch filed a Reply (Doc. No. 102).

### BACKGROUND

The underlying facts of this case are set forth in this Court's opinion *Cont'l Cas. Co. v. Auto Plus Ins. Agency*, --- F. Supp. 2d ---, No. 08 CV 1889, 2009 WL 4912216, at *1-*2 (N.D. Ohio Dec. 11, 2009). Briefly, James Ehrsam ("Ehrsam") filed suit against Billings in June 2008 in state court in Fulton County, Ohio, alleging that Billings had breached his duty as an insurance agent to provide Ehrsam with adequate property insurance coverage. Specifically, Ehrsam claimed that Billings negligently sold him inadequate coverage in May 2002, and that Billings' negligence continued at each of the yearly renewals of Ehrsam's policy through 2007. Plaintiff Continental Casualty Corporation ("Continental") was Billings' professional liability insurer. Continental filed this suit

on August 6, 2008, seeking declaratory judgment against Billings, Auto Plus Insurance Agency (the agency for which Billings worked), and Ehrsam. The crux of the dispute was whether Continental, Billings' professional liability insurer, had a duty to defend and indemnify Billings against Ehrsam's negligence claims in the underlying state court suit.

On October 17, 2008, Billings filed third-party claims against three parties, including Arch (Doc. No. 20); on February 23, 2009 Billings added two more parties (Doc. No. 46). All five of these Third-Party Defendants were former liability insurers or agents who had placed professional liability insurance for Billings. Arch was Billings' professional liability insurer from January 1, 2004 to January 7, 2005. Billings' Third-Party Complaint against Arch stated, "[a]s an insured under the terms of the E&O ["Errors and Omissions"] policy between Farmers and Arch . . . Mr. Billings is entitled to coverage under the terms of the Arch E&O policy" (Doc. No. 20, ¶ 29).

On April 28, 2009, Arch e-mailed a letter to Robert Bahret (Billings' counsel) requesting that Billings voluntarily dismiss his claims against Arch (Doc. No. 100-1, Ex. A). Arch's letter explained that the Arch policy under which Billings claimed coverage was a "claims made and reported" policy, meaning Billings' coverage only extended to "a claim first made against the insured during the policy period . . . and reported to Arch 'in writing during the policy period'" (Doc. 100-1, Ex. A) (emphasis omitted). For Billings, the applicable reporting ended on April 7, 2005 (there was a ninety-day reporting window after the contract terminated). Arch's letter then noted that Ehrsam had filed suit against Billings in June 2008, more than three years after the reporting period had expired. Thus, explained Arch, by the clear terms of Arch's policy, Billings was not entitled to coverage for Ehrsam's claims.

2

The letter did not specifically mention Federal Civil Rule 11, but noted that Billings' refusal to drop his claims against Arch would "invite the Court's scrutiny of whether a reasonable basis for the claim against Arch ever existed," and that "Billings should be prepared to pay for any fees" incurred by Arch.

Thirty-three minutes after the email was sent, Bahret emailed back the following reply (Doc. No. 100-1, Ex. B):

> [N]o need to wait till Friday to announce our intentions because the filing of the action was not done as a knee jerk reaction or without some forethought. You may not agree with the position and I respect your comments but my client is in a situation where he was NEVER without a paid policy in force but yet nobody is acknowledging coverage. I find it hard to believe that a court with jurisdiction of every company that wrote coverage for Ron at any relevant time will allow a result where each and every insurer would be allowed to keep the premiums but still tell my client to pound sand and say he was uninsured for claims that occurred within the policy dates. If the court so rules I guess that is life but it isn't what we expect. The idea of a policy requiring both an occurrence and the notification of a claim is, at best, providing illusory coverage in part because the possibility of having both an occurrence and a claim within the first several months of a policy is about a one in ten billion chance. However, premium payment starts from day one.
>
> In any event, although we respect your reasoned opinion we must decline to voluntarily dismiss.

Arch remained in the case, participated in the development of a Joint Statement of Facts (Doc. No. 80), and on July 24, 2009, filed a Motion for Summary Judgment (Doc. No. 88). Arch's Motion reiterated its arguments from the April 28 letter: Billings' policy with Arch was a "claims made and reported policy," and the claim had not been made or reported within the applicable policy period. On September 2, 2009, during a status phone conference with the Court, Billings' counsel admitted there was no basis for opposing Arch's Motion (presumably after researching and realizing there was no legitimate grounds to oppose), and this Court then granted the summary judgment (Doc. No. 96).

3

After this Court ruled on the other parties' various motions for summary judgment, Arch filed for sanctions against Bahret.

## **STANDARD OF REVIEW**

A federal court has three potential bases for imposing sanctions: Federal Civil Rule 11, 28 U.S.C. § 1927, and its inherent power to impose sanctions based on bad-faith conduct. Federal Civil Rule 11(b) sets out an attorney's duty in making representations to the court:

> By presenting to the court a pleading, written motion, or other paper[,] an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Rule 11(c) then describes the penalties that may be leveled for violation of this standard:

> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

The standard for Rule 11 inquiries is whether the actions are objectively reasonable under the circumstances. *Albright v. Upjohn*, 788 F.2d 1217, 1221 (6th Cir. 1986). Rule 11 "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule." *Albright*, 788 F.2d at 1221. Moreover, a plaintiff must "review and reevaluate his pleadings [continually] and where appropriate modify them to conform to Rule 11." *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988). A good-faith belief in the merits of a case is insufficient to avoid Rule 11 sanctions. *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990).

Sanctions are mandatory in the event the court determines Rule 11 has been violated, but the court has "wide discretion" in delineating the extent of those sanctions. *Albright*, 788 F.2d at 1222.

In addition, sanctions may be awarded against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. This includes "conduct where an attorney knows or reasonably should know that a claim pursued is frivolous." *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002) (quotation omitted). Finally, courts have inherent power to sanction bad-faith conduct if the statute or rules do not provide an adequate sanction. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

## DISCUSSION

An award of Rule 11 sanctions in this case is a close question. To be sure, Bahret's "kneejerk" email response was not helpful, and its tone and substance were unresponsive to the concerns Arch raised in its letter. Nonetheless, this Court concludes that Bahret's refusal to voluntarily dismiss Arch did not violate Rule 11, because Bahret had a non-frivolous basis for pursuing claims against Arch.

Billings' theory was that the terms of the various insurance policies, including Arch's, did not tell the whole story. Billings had always maintained professional liability insurance, and believed equitable principles demanded that *someone* should defend him in the underlying state court suit, or at least have advised him that he was not covered for this type of claim. Bahret accordingly pursued claims that the policies provided "illusory coverage," and that the insurers should have advised him that he needed retroactive coverage. Those are not inherently unreasonable positions, even if they ultimately lacked merit. As noted in this Court's prior opinion, insureds may seek relief against insurance *agents* under Ohio law if circumstances create an affirmative duty to advise on the part of the agent. *See, e.g.*, *Advent v. Allstate Ins. Co.*, No. 05-AP-1092, 2006 WL 1495066, at *3 (Ohio Ct.

App. June 1, 2006). Bahret's notion that insurers themselves might have a similar duty is not a frivolous or unreasonable position. Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *McGhee v. Sanilac County*, 934 F.2d 89, 92 (6th Cir. 1991) (quoting advisory committee note to Federal Civil Rule 11).

Because Bahret's theory of the case was based on equity, Arch's letter did not address what Bahret believed, or hoped, would be the basis for coverage. Bahret was justified in declining to dismiss Arch in the early stages of the case so that Bahret could fully develop any potential equitable theories. By the time Arch filed its Motion for Summary Judgment, Bahret had determined that such theories were untenable and therefore did not oppose the Motion. Had Bahret continued his defiance at that point, sanctions might well be appropriate.

Arch correctly notes the Third-Party Complaint says nothing about "equitable principles," but rather is based on the explicit terms of the Arch Policy. While this failure by Bahret suggests sloppy pleading, Bahret's equitable theory was related to the insurance policy referenced in the Third-Party Complaint. The record does not disclose that his theory, that some policy had to provide coverage, was advanced in bad faith or without some rational basis, even if a reasonable evaluation of success was slim. In sum, Bahret's behavior does not quite rise to the level of "objective unreasonableness" that would warrant sanctions.

For these same reasons, this Court declines to impose sanctions under 28 U.S.C. § 1927 or under its inherent power to sanction bad-faith conduct.

**CONCLUSION**

Therefore, Arch's Motion for Sanctions against Third-Party Plaintiff Billings' counsel Bahret is denied.

IT IS SO ORDERED.

                                         s/ *Jack Zouhary*
                                         JACK ZOUHARY
                                         U. S. DISTRICT JUDGE

                                         April 13, 2010